[No. 53277-4-I.   Division One.   February 28, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY RILEY WHITE, *Appellant*.

*Allen M. Ressler* (of *Ressler & Tesh, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Erin H. Becker, Deputy*, for respondent.

¶1 AGID, J. — Jeffrey White was charged with second degree malicious mischief after he allegedly hit his girl friend's car with his truck. He moved to dismiss the charge, arguing the State inappropriately subpoenaed evidence from a third party without notifying him. The trial court denied the motion and convicted White after a stipulated facts trial. White appeals, arguing the trial court should have dismissed the case because the State illegally obtained evidence. We agree with White that court rules required the State to notify him when it issued a subpoena duces tecum. But because the trial court neither admitted nor considered the evidence at issue, and White does not demonstrate that he was prejudiced by the State's error, we affirm.

## FACTS

¶2 In September 2002, Vicky King attempted to end her 11 month relationship with Jeff White. Some days later, White followed King as she drove to work. In the parking garage, White pulled his truck in front of King's car and got out. King was on the phone, and White demanded that she hang up. When King refused to do so, White returned to his truck, backed up, then drove forward, striking King's vehicle. After he hit King's car a second time, White got out of his truck, reached into King's open car window, took her keys, cellular phones, and purse, and demanded that King get into his truck. King complied, but later escaped when another person entered the garage. White fled the scene,

but later admitted to several witnesses that he hit King's car.

¶3 On September 27, 2002, the State charged White with second degree malicious mischief. While the case was pending, King sought compensation from White's automobile insurance company, Dairyland Insurance, for her vehicle's damage. In November 2002, Dairyland asked White for a statement to determine liability and coverage. One month later, a Dairyland representative interviewed White in the presence of Allen Ressler, his criminal defense attorney. The interview was tape-recorded and primarily involved the representative and White, although Ressler occasionally answered questions and prompted White's memory about various details. During the interview, White stated that he drove up beside King's car and came to a complete stop. According to White, King then drove forward and intentionally hit his car. White denied ever hitting King's car.

¶4 In March 2003, the King County Prosecutor's Office issued a subpoena duces tecum to Dairyland, requesting a copy of its interview with White. The subpoena was never filed with the court nor served on White or his counsel. Dairyland complied with the subpoena. One month later, the prosecuting attorney sent a copy of the interview transcripts to Ressler. It was at that time that Ressler first became aware that the State had obtained the transcripts. On April 14, 2003, White moved to dismiss the case, arguing the State violated court rules and abused process by acquiring the interview statement without notifying him. The court denied the motion, concluding that court rules did not require the State to notify White that it was seeking the statement. On September 5, 2003, we denied White's petition for discretionary review.

¶5 In October 2003, the parties stipulated to the admission of certain evidence, *excluding* the transcript of the insurance interview. Based on the stipulated facts, the trial court convicted White as charged. The court sentenced White to two and one-half days' confinement. On appeal, White argues the trial court should have dismissed the case

because the State illegally obtained the insurance interview statement.

## DISCUSSION

■ ■ ¶6 First we need to decide whether court rules require a party to notify the adverse party when issuing a subpoena duces tecum. In Washington, subpoenas in criminal proceedings are issued in the same manner as subpoenas in civil actions,[1] so we look to the civil rules to determine whether they require notice. Civil Rule (CR) 45 sets out the rules for issuing subpoenas in civil cases. CR 45(b) provides that a subpoena may command a person to produce books, papers, documents, or other tangible things as designated, but that the court, upon prompt motion, may quash or modify an unreasonable or oppressive subpoena. Unless an adverse party has notice of the subpoena, it is difficult to imagine how he can move to quash or modify it.

¶7 And under CR 26(c), parties other than those subpoenaed may request protection orders against those seeking discovery. The rule states that "[u]pon motion by a party *or* by the person from whom discovery is sought," the court may issue an order that strikes down or limits the discovery sought by the subpoenaing party.[2] Even if the subpoena is directed to a third person as it was here, the party to the litigation must have notice of the subpoena.

¶8 CR 5 also mandates service of a subpoena on the adverse party. This rule requires that

> every order required by its terms to be served, every pleading subsequent to the original complaint . . . , every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance,

---

[1] CrR 4.8.

[2] CR 26(c) (emphasis added).

demand, offer of judgment, designation of record on appeal, and similar paper *shall be served upon each of the parties.* . . . [3]

This rule clearly states that any discovery document required to be served on a party must be served upon each party. And because a party must have notice in order to object to a subpoenas duces tecum, we conclude that they fall into this category.

■■ ¶9 White moved to dismiss this case under Superior Court Criminal Rule (CrR) 8.3(b). This rule allows a court to dismiss a criminal prosecution when arbitrary action or governmental misconduct prejudices the defendant so as to materially affect his right to a fair trial. We review a trial court's decision whether to dismiss charges for a manifest abuse of discretion.[4] A trial court abuses its discretion if its decision is manifestly unreasonable or it exercises its discretion on untenable grounds or for untenable reasons.[5]

■ ■ ¶10 In this case, White fails to show how the State's acquisition of the interview statement caused him actual prejudice. A defendant cannot succeed on a CrR 8.3(b) motion without proving by a preponderance of the evidence that he suffered actual, rather than speculative, prejudice that affected his right to a fair trial.[6] Here, White makes much of the fact that the State acquired the interview statement without providing proper notice. But White's statement was exculpatory, the State never sought to admit the statement, and the statement was not part of the stipulated record before the court. The court convicted

---

[3] CR 5(a) (emphasis added).

[4] *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997) (citing *State v. Warner*, 125 Wn.2d 876, 882, 889 P.2d 479 (1995)).

[5] *Id.* (citing *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)).

[6] *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (citing *Michielli*, 132 Wn.2d at 239-40; *State v. Starrish*, 86 Wn.2d 200, 205, 544 P.2d 1 (1975)).

White without any reference to the insurance interview.[7] White has failed to demonstrate the prejudice required for a CrR 8.3(b) dismissal.

¶11 We hold that court rules require service of subpoenas duces tecum upon adverse parties in both criminal and civil cases. But because White suffered no prejudice in this case, we will not reverse his conviction.

¶12 We affirm.

KENNEDY and SCHINDLER, JJ., concur.

Review denied at 155 Wn.2d 1023 (2005).

---

[7] Nor was there any indication the State used the statement to discover further evidence or discover privileged or strategic information it could use to White's disadvantage.